AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia



JUN 1 9 2017

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

In the Matter of the Search of ) 
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 3:17SW135
One Apple IPhone 5S model # A1533, IMEI: )
358755059196003, cracked screen, located at the HSI )
Office, 400 N 8th Street, Suite 1132, Richmond, VA )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

One Apple IPhone 5S model # A1533, IMEI: 358755059196003, cracked screen, located at the HSI Office, 400 N 8th Street, Suite 1132, Richmond, VA

located in the _____Eastern_____ District of _____Virginia_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. §§ 841(a) & 846 | Posses with intent to Distribute and Conspiracy to Distribute marijuana and cocaine |
| Title 18 U.S.C. § 922(g)(1) | Possession of Firearms by a Convicted Felon |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's Signature*

Kevin D. Hogancamp, HSI, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 06/19/2017

/s/ 
Roderick C. Young
United States Magistrate Judge
*Printed name and title*

City and state: Richmond, Virginia

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF (1) One Apple IPhone 5S model # A1533, IMEI: 358755059196003, cracked screen (2) one Samsung, model SGH-T399H, cracked screen. These devices are currently located at the HSI Office, 400 N 8th Street, Suite 1132, Richmond, Virginia. | Case No. 3:17SW 135  136 |



**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Kevin Hogancamp, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an Application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described more fully in Attachment B which is incorporated herein by reference.

2. I am a Special Agent with Homeland Security Investigations ("HSI") and have been since 2008. I am thus an officer of the United States who is empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Title 21 and related statutes. In my capacity as a Special Agent of the HSI, I have participated in investigations into the unlawful possession, possession with the intent to distribute, and distribution of controlled substances, and their associated conspiracies in violation of Title 21, United States Code, Sections 841(a)(1) and

1

846. I have conducted and assisted in investigations into the unlawful possession of firearms in violation of Title 18, United States Code, Section 922(g)(1), and possession of firearms in furtherance of crimes of violence in violation of Title 18, United States Code, Section 924(c). I have participated in the preparation and execution of numerous arrest and search warrants for criminal offenses involving the distribution and conspiracy to distribute controlled substances and illegal possession of firearms. I am familiar with the methods drug traffickers use to conduct their illegal activities to include communication methods, vehicles, text messaging, asset management, and narcotics transactions.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The information provided is based upon my personal knowledge, or that of other sworn law enforcement officers participating in this investigation.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

1. The property to be searched includes: (1) One Apple IPhone 5S model # A1533, IMEI: 358755059196003, cracked screen; and (2) one Samsung, model SGH-T399H, cracked screen hereinafter, SUBJECT DEVICES. The SUBJECT DEVICES are currently secured at the HSI Office, 400 N 8th Street, Suite 1132, Richmond, Virginia.

2. The applied-for warrant requests authorization to conduct forensic examinations on the SUBJECT DEVICES for the purpose of identifying electronically stored data particularly described in Attachment B.

## RELEVANT STATUTORY PROVISIONS

3. Title 21 United States Code, Sections 841(a)(1) and 846, Conspiracy to Distribute Controlled Substances, and Title 18, United States Code, Section 922(g)(1), possession of a firearm by a convicted felon.

## TECHNICAL TERMS

4. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. **Wireless telephone**: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

3

b. **Digital camera**: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. **Portable media player**: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. **IP Address**: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer connected to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly

from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

e. **Internet**: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

5. Based on my training, experience, and research, I know the SUBJECT DEVICES have capabilities that allow them to: serve as a wireless telephone, digital camera, portable music/media player, connect to the internet, send and receive emails, and/or send and receive text messages. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## PROBABLE CAUSE

6. On August 3, 2015, Richmond Police Officers conducted a traffic stop in the 200 block of St. Peter Street, Richmond, Virginia for improper display of a license plate, and failure to stop at a stop sign. The vehicle had Virginia license plate VJK4995 and was occupied by one person.

7. Following the activation by police of their emergency equipment, the driver was observed dipping down to the right side of the vehicle numerous times before the vehicle came to a stop.

8. Upon contact with the driver (later identified as Thomas Allen BACON) Richmond Police Officer Livengood immediately asked BACON if there were any firearms located in the vehicle. In response, BACON stated "No."

9. Richmond Police Officers observed in plain view a weapon magazine hanging out of a bag on the passenger side floorboard. As a result, BACON was asked to exit from the vehicle. BACON failed to comply when asked to exit, and began reaching towards the passenger side of the car at which point Richmond Police Officer Stirrett drew his firearm and ordered BACON to exit from the vehicle. In response, BACON grabbed the gear shift in an attempt to place the vehicle into drive.

10. Officer Stirrett holstered his weapon and entered the vehicle from the passenger side and ordered BACON out of the vehicle. At that point, BACON complied and was detained.

11. RPD Officer Livengood then recovered a Glock 19, 9mm pistol fully loaded with a 30 round magazine inside the bag on the passenger side floorboard. Serial number NUZ147 was marked on the lower receiver of the pistol.

12. RPD Officer Livengood also recovered a digital scale from the center console. Visible on the silver portion of the scale was white residue. I am aware, based on my training and experience, that drug traffickers frequently possess digital scales so that they can weigh their narcotics prior to sale/distribution to their customers. The scale recovered from the center console was sent to the Virginia Department of Forensic Science for testing. The results confirmed that the residue on the scale contained a mixture of both marijuana and cocaine.

13. RPD Officers also located One Apple IPhone 5S model # A1533, IMEI: 358755059196003, cracked screen; and (2) one Samsung, model SGH-T399H, cracked screen

(The SUBJECT DEVICES) from the driver's seat and $181 in United States currency from BACON's wallet.

14. On November 2, 2016, the Commonwealth of Virginia *nolle prossed* the charges against BACON.

15. On November 3, 2016, BACON left a voicemail for RPD Officer Livengood stating that he was calling about the "release of my property, my cell phone, my money and uh the weapon, the judge and the prosecutor said that you should, can you please give me a call back, to release the property and so I can get it, oh thank you, enjoy the rest of your evening, your morning."

16. I am aware that BACON was convicted of a felony prior to August 3, 2015 and as a result, was prohibited from possessing firearms and/or ammunition. Your affiant is further aware that the firearm described in paragraph 11 above had been manufactured outside of the Commonwealth of Virginia and as such, had traveled in interstate or foreign commerce.

17. On January 3, 2017, BACON was indicted in the Commonwealth of Virginia for felon in possession of firearm, Code Section: 18.2-308.2.

18. On April 19, 2017, Virginia State Police (VSP) intercepted a Fed-Ex package originating from California that was suspected of containing narcotics. The recipient for the package was listed as Thomas Beacon, 2200 Pine Glen Ct., Sandston, Virginia. VSP narcotics K-9 Trooper J.R. Johnson is a canine narcotics detector handler with VSP and he observed that narcotics detection canine "Grace" alerted in a positive manner to the presence of a drug odor contained in the aforementioned package. As a result, VSP executed a state search warrant on the described FedEx package and found approximately 11 pounds of suspected marijuana inside.

19. Based on my training and experience, I am aware that 11 pounds of marijuana is a quantity that is inconsistent with personal use and consistent with the intent to distribute.

20. On April 19, 2017, Henrico County Police established surveillance on 2200 Pine Glen Ct., Sandston, Virginia. During surveillance Henrico County Police observed a black male exit the residence wearing black jeans and a dark colored hoodie that had a Superman emblem on the front of the hoodie. This individual was later identified as Thomas Allen BACON. Law enforcement observed BACON enter a black 4 door Hyundai Genesis bearing VA tag VVM 2303 that was parked in the driveway of the residence. BACON drove away, was gone for a short period of time, and then returned back to the residence. During surveillance, BACON was observed outside the residence in possession of a cellular telephone.

21. On April 19, 2017, at approximately 1500 hours, VSP conducted a controlled delivery of the package to 2200 Pine Glen Ct., Sandston, Virginia. Following the controlled delivery by VSP, Henrico County Police executed a state search warrant at 2200 Pine Glen Ct., Sandston, Virginia. During the execution of the search warrant, Henrico County Police located Thomas Allen BACON inside 2200 Pine Glen Ct., Sandston, Virginia. BACON was the only person inside the residence at the time of the execution of the search warrant.

22. Henrico County Police arrested BACON and charged him with Possession with Intent to Distribute Marijuana greater than five pounds; transporting more than five pounds of marijuana into the Commonwealth; and Possession with Intent to Distribute Oxycodone.

23. Following the execution of the search warrant, Henrico County Police narcotics K-9, with K-9 handler Officer Ruark, screened the Hyundai Genesis bearing VA tag VVM 2303, that law enforcement had observed BACON operating. The K-9 indicated a positive alert for the odor of narcotics, and the vehicle was searched. Among the items found inside the vehicle was a

rental agreement for a storage unit located at 1717 Bloom Lane (Public Storage). The agreement was for unit A054, and was in the name of "James Bacon" with an address of 2200 Pine Glen Ct., Sandston, VA. In the location where the renter signs for the storage unit was the signature "Thomas BACON."

24. On April 19, 2017, at approximately 1840 hours, Henrico County Police executed a state search warrant at Self Storage, 1717 Bloom Lane, Henrico, VA 23223, Unit A054. Located inside Unit A054 were the following items: two pistols; one stolen shotgun; $1820 in counterfeit United States currency; approximately 2.9g. of suspected (crushed) Oxycodone; approximately 2.4g. of suspected cocaine base, commonly known as "crack;" approximately 55.3g. of suspected powder cocaine; and assorted ammunition.

25. Based on my training and experience, I am aware that 55.3 grams of powder cocaine, a Schedule II controlled substance is inconsistent with personal use and consistent with the intent to distribute. Further, I am aware that prior to April 19, 2017, BACON was convicted of a felony and therefore prohibited from possessing firearms and/or ammunition.

26. On June 13, 2017 Richmond Police Department transferred custody of the SUBJECT DEVICES to HSI. The SUBJECT DEVICES are currently in the lawful possession of HSI. The SUBJECT DEVICES are currently in secured storage at the HSI Office, 400 N 8th Street, Suite 1132, Richmond, Virginia. In my training and experience, I know that the SUBJECT DEVICES has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as when the SUBJECT DEVICES first came into the possession of the HSI.

27. I am aware, based upon my training and experience, that drug traffickers frequently communicate with their sources of supply and their customers via cellular telephone,

and that a cellular telephone is one of the tools of the drug trafficking trade. Further, I am aware that drug traffickers often store contact information for their customers and their suppliers in their cellular telephone, and that they utilize text messages, among other means, to communicate with their sources of supply for narcotics, as well as to let their customers know when they have narcotics available for sale. In addition, customers will often contact a drug trafficker to let them know they are interested in purchasing a particular narcotic, and that they want a particular amount. Negotiations between the dealer and his customers, or the dealer and his sources of supply, are frequently found during the examination of a cellular telephone pursuant to a search warrant – often times, these negotiations will utilize coded language when discussing prices and particular controlled substances.

28. Further, I am aware that individuals who are in the underground market for firearms will often conduct web-based searches for firearms, and will post photographs of the firearms that they have available for sale.

29. In addition, individuals will frequently take photographs of themselves holding firearms in order to give themselves greater credibility as an established, armed narcotics or firearms trafficker who will resist any attempts by customers or suppliers to rob them of their drugs or their drug trafficking proceeds (i.e. cash).

30. I am aware that narcotics trafficking is an on-going business, that is often done over an extended period of time. Based on the recovery on August 3, 2015 of the firearm and ammunition, as well as the recovery of the digital scale with marijuana and cocaine residue, combined with the recovery in 2017 of multiple firearms (to include a stolen firearm), as well as the recovery of marijuana and cocaine in quantities inconsistent with personal use and consistent with the intent to distribute, your affiant states that there is probable cause to believe that an

examination of the DEVICES will reveal evidence of the defendant's possession of the DEVICES, as well as his involvement in illegal activity, to wit: drug trafficking activity involving the distribution of both marijuana and cocaine, and his involvement in a conspiracy to distribute marijuana and cocaine, and his involvement in illegal firearms sales, purchases, and/or possession in violation of Title 21, United States Code, Sections 841(a) and 846, and Title 18, United States Code, Section 922(g)(1).

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

31. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on electronic devices. This information can sometimes be recovered with forensics tools.

32. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of drug trafficking crimes as described herein, but also may provide forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be found on the SUBJECT DEVICE because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

11

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

33.   *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT DEVICE consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

34.   *Manner of execution.* Because this warrant seeks only permission to examine those devices that are already in law enforcement's possession, the execution of this warrant

does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## SPECIFICITY OF SEARCH WARRANT RETURN AND NOTICE REGARDING INITIATION OF FORENSIC EXAMINATION

35. Consistent with the Court's current policy, the search warrant return will list the model and/or serial number of the SUBJECT devices, and include a general description of any and all associated peripheral equipment that has been seized.

36. Moreover, the Government will file a written pleading in this case within one hundred twenty (120) days after the execution of the search warrant notifying the Court that the acquisition of data from digital evidence seized from the target location is complete, and the forensic analysis of devices and media has begun. Such notice will include confirmation that written notice has been provided to the defendant or his counsel informing the defendant that the forensic examination of evidence seized from him has actually begun. Such notice to the defendant and the Court is not intended to mean, and should not be construed to mean, that the forensic analysis is complete, or that a written report detailing the results of the examination to date will be filed with the Court or provided to the defendant or his counsel. This notice does not create, and is not meant to create, additional discovery rights for the defendant. Rather, the sole purpose of this notice is to notify the defendant that, beyond the simple seizure of his property, a forensic search of that property has actually begun.

## CONCLUSION

37. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

## REQUEST FOR SEALING

38. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into a criminal conspiracy, as not all of the targets of this investigation are aware that they are targets. Based upon my training and experience, I have learned that those who are aware that they are under investigation oftentimes actively search for criminal affidavits and search warrants via the Internet, and disseminate them to others co-conspirators as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize it.

Respectfully submitted,

_____
Kevin Hogancamp
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
on the __19th__ day of June, 2016

/s/ _____
Roderick C. Young
United States Magistrate Judge

## **ATTACHMENT A**

1. The property to be searched is: (1) One Apple IPhone 5S model # A1533, IMEI: 358755059196003, cracked screen (2) one Samsung, model SGH-T399H, cracked screen. These devices are currently located at the HSI Office, 400 N 8th Street, Suite 1132, Richmond, Virginia.

2. This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B, which is incorporated by reference.

## **ATTACHMENT B**

1. All records on the SUBJECT DEVICES described in Attachment A that relate to violation of 21 U.S.C. §§ 841(a)(1) and 846, and involve Thomas Allen BACON including:

   a. Notes, ledgers, messages, and similar records relating to the transportation, ordering, purchasing, and distribution of controlled substances.

   b. Address books, phone books, applications ("Apps"), and similar records reflecting names, addresses, telephone numbers and other contact or identification data.

   c. Applications and records relating to drug trafficking income, and expenditures of money and wealth, including bank records.

   d. Calendars, applications, and other records referencing meetings, schedules, and interstate and foreign travel.

   e. Digital photographs, videos, or audio recordings of confederates, assets or controlled substances, the spending of drug proceeds, and specific locations connected to the user of the phone.

   f. Stored communications, including text messages, MMS messages, and voicemails.

   g. Any subscriber or owner information for the cellular telephones.

   h. Any cellular telephone records, and telephone books or lists, or receipts relating to the acquisition and purchase of cellular telephones, or minutes purchased or applied to cellular telephones.

   As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of devices or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2. Evidence of user attribution showing who used or owned the SUBJECT DEVICE at the time the things described in this warrant occurred, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

1